Nicholson, C. J.,
delivered the opinion. of the court.
This case involves the constitutionality of the act *473 of January 24, 1871, which enacts “that in addition to the ad valorem tax, to be paid by merchants on their capital, they shall be liable and required to pay a license tax equal in amount to the ad valorem tax: provided, that in no case shall the license tax be less than five dollars.” In pursuance of this act, the plaintiff in. error, who is a merchant, was taxed on his capital invested in merchandize, an amount equal to the ad valorem tax assessed on all other property, and in addition thereto, he was assessed as “merchant,” an equal amount for a license tax.
No question is made as to the power of the Legislature to ■ impose the ad valorem tax, but it is argued with much earnestness and great force, that the additional license tax is unauthorized by the true construction of the Constitution. The clause of the Constitution under which the Legislature claimed the power to enact the law complained of, is in these words: “But the Legislature shall have power to tax merchants, peddlers and privileges, in such manner as they may from time time direct.”
Upon well settled principles of construing constitutional or statutory provisions, the enumeration of “merchants” and “peddlers” as distinct objects of taxation, would generally be taken as excluding the intention of embracing them under the term “ privileges,” which is also designated as a distinct subject for taxation. The power to tax “merchants” and “peddlers” is as distinctly recognized by these terms as objects of taxation as in the term “privileges,” and the fact that *474 the framers of the Constitution specified merchants and peddlers as distinct objects, would seem to indicate that they did not use the word “privileges” as including in its definition, either “merchants” or “peddlers,” but that they intended they might be taxed as merchants and peddlers, and not as privileges.
Under this view of the probable meaning of the above quoted clause, we are under no necessity of construing the word “ privileges,” or of undertaking to define its true meaning. It is sufficient for our present purpose, to state, that if the Legislature passed the third section of the act of 1870, c. 45, under the impression that it was necessary for them to prohibit any one from engaging in merchandizing, with the view of thereby obtaining the power to tax such person as enjoying a privilege, by reason of obtaining a license, they acted under a misapprehension of the meaning of the Constitution, and performed an act of supererogation. They had the plain language of the Constitution, recognizing their power to tax merchants as such, without any enactment for the purpose of bringing them within the term “privileges.” We may add, that if the tax now called in question, can not be sustained upon the power to “tax merchants,” it can not be sustained upon the power to tax “ privileges.”
But we do not understand the prohibition against merchandizing, without first having obtained a license, as being intended to secure the power of taxing merchandize as a “privilege,” but as the means of secur *475 ing the prompt and faithful performance of the duty of taking out a license, by annexing a penalty to the failure to do so.
Although it is not necessary in the present case to give a definition of the term “privileges” as used in the Constitution of 1870, it may not be improper, in view of the severe criticisms in which counsel have indulged, as to the definition of the term by the Legislature, and by this Court, from the time of its introduction into the Constitution of 1834, down to the present time, to remark, that we have no disposition to depart from a definition of the word, which was adopted .nearly forty years ago by the Legislature which organized the State government under the Constitution of 1834, and which has been followed ever since by successive Legislatures, and by the judicial department in numerous adjudications, made by the successive judges who have since occupied the Supreme Court bench. In 1859, in the case of the Mayor and Aldermen of Columbia v. J. L. Guest, Judge Caruthers used the following language: “What are privileges, is a question of construction dependent upon the general law. We have defined it in several cases to be, the exercise of an occupation or business, which require a license from some proper authority, designated by a general law, and not open to all, or any one, without such license. It is a power of the Legislature alone to create privileges, and forbid their exercise without license.”
It is too late now to enquire whether this defini *476 tion of “privileges” conforms strictly to the true philological meaning of the term. It is the fixed legislative and judicial definition, and by its adoption in the Constitution of 1870, its definition, as so underderstood and fixed by previous legislative interpretation and judicial construction, is to be regarded as having the sanction of constitutional recognition.
It may not be out of place to remark, further, that in the adjudications heretofore made in- our State, as to the power of the Legislature to create privileges for purposes of taxation, it has not been necessary for the courts to refer - this authority to the police power which every sovereign State has to forbid such things as are detrimental to the public welfare. This power is never invoked except when it becomes necessary to forbid something that already is, or which may be, injurious to the public welfare. But when the object to be accomplished is legitimate taxation, and not absolute prohibition, the power is to be sought for either in the necessary incident to legislative authority, or in the express provisions of the Constitution.
There is a broad distinction between the exercise of the taxing power, as an incident of legislative authority, under constitutional provisions, and of the power of prohibition or destruction under the police power. In the adjudications which have determined that the Legislature may create privileges for the purposes of taxation, the power has been found under constitutional provisions, and hence there has been no necessity to resort to the police power, to sustain the authority of *477 the Legislature. Whenever, therefore, a case of absolute prohibition or destruction of a common right shall cease, it will be time enough to determine whether such case falls within the proper exercise of the police power, or whether it is an abuse of that power, and therefore null and void. But the question now before us, involves no such exercise of the police power, but simply the question whether the taxing power has been constitutionally exercised. And to that question we will confine our examination.
It is a principle of universal constitutional law, that the power to levy and collect taxes is an incident of sovereignty. The Constitution of the State does not confer upon the Legislature the power of taxation — it passes under the general designation of “ legislative power.” There is no limitation upon the Legislature as to the amount or objects of taxation, except that found in the restrictions and prohibitions of the Constitution.
That section of the Constitution, in which is found the clause under which the tax in question was imposed, first lays down the general prohibition, that all property, real, personal and mixed, shall be taxed, but gives to the Legislature a discretion as to taxing property held by the State, by counties, cities, or towns, etc., and then by way of restriction upon the exercise of the power proceeds as follows: “All property shall be taxed according to its value, that value to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property, from which *478 a tax may be collected, shall be taxed higher than any other species of property/of the same value.”
This is an absolute and imperative inhibition upon the Legislature, requiring them, in taxing property, to provide that it be taxed according to value, but expressly excepting from the inhibition the manner of ascertaining that value. This much is left to the discretion of the Legislature, but this discretion is to be so exercised, that no one species of property from which a tax is collected, shall be taxed higher than any other species of property of the same value.
So far the provision is confined expressly to the taxation of property. Then follows the controverted clause: “But the Legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct.”
This language would seem, at first view, to confer upon the Legislature the power to tax merchants, peddlers, and privileges. Its true object, however, was to indicate with distinctness, that the power to tax merchants, peddlers, and privileges, was not to be understood as inhibited by the restriction as to the taxation of property. Its meaning is, that although in taxing property the Legislature is forbidden to tax it, except according to its value, yet as to merchants, peddlers, and privileges, the Legislature is not to be restricted, but may exercise the taxing power without restrictions, either as to the amount, or as to the manner or mode of exercising the power. The word “but” is significant of the purpose intended to be accomplished; it indicates that what follows is an ex *479 ception to that which had gone before, and is not to be controlled by it.
• The words- “in such manner” used in this clause, have no other significance than to express with more distinctness and emphasis, that the power of the Legislature to tax merchants, peddlars, and privileges, was unlimited and unrestricted, and might be exercised in any manner and mode in their discretion.
The first clause has exclusive reference to the taxation of property, and in doing this the restriction is that it shall be taxed according to its value. The second clause has reference to the taxation of merchants, peddlars, and privileges, and in doing this, the discretion of the Legislature, both as to amount and manner of taxing, is clearly recognized. This clause has no reference whatever to the taxation of property— it is confined to the power to tax persons engaged in the business of merchandizing and peddling, and those enjoying privileges. It is not imperative upon the Legislature, requiring them to tax these occupations or persons, but it is left to the Legislature to exercise the power or not, as in their wisdom, sound policy may dictate.
The question now arises, does the act of 1871, already quoted, come in conflict with the clause of the Constitution, under which the Legislature claimed the power to enact it, and which we have construed?
It is agreed by the parties, that the plaintiff is a wholesale druggist, doing- business in Nashville — that $20,000 dollars was the cash value of the largest amount of goods, which he had in store at any one *480 time, subject to taxation during the year ending the 18th January, 1872 — that, defendant, as Clerk of the County Court, assessed and collected from the plaintiff $240, tax for the State — of which $120 was collected as ad valorem tax .on capital stock, and $120 was collected as a license or privilege tax as a merchant, for the year ending January 18th, 1872 — that the plaintiff paid this tax under protest, and this action is to recover the money back.
The Court below, Judge Guild presiding, gave judgment for the defendant, and the plaintiff has appealed.
It is obvious, that the tax was assessed and collected in pursuance of the law — but if the law was unconstitutional, then the plaintiff is entitled to recover the money back.
The first ground upon which ' it is insisted, that the law is in violation of the State Constitution, is, that it taxes one species of property higher than other property is taxed. It is true, that under this law, the merchant pays an ad valorem tax on the value of his merchandize, equal to the tax paid on all other taxable property, and in addition to this, he pays a license tax of an equal amount. In ' this way he is required to pay a higher tax than others who are not merchants, having an equal amount in value of other property. But as the Legislature is unrestricted in its discretion, as . to the amount of tax that may be 'assessed on merchants as merchants, and as to the manner in which it may be assessed, it follows, that the additional -tax is not obnoxious to constitutional objection, unless such additional tax is an ad valorem *481 and not a license tax. In the agreed statement of facts, it is said, “that $120 was collected as ad valorem tax on capital stock, and $120 as a license or privilege tax as a merchant.” As a matter of fact then, the additional tax was not assessed on the merchandize of the merchant, but on his occupation as merchant.
It is not denied, that • if the whole tax of $240 had been assessed against the plaintiff as a merchant, no exception could have been taken to it, as the power to tax him as merchant is unlimited by any provision of the Constitution. But it is contended, that as an ad valorem tax was assessed on plaintiffs merchandise, equal to the tax on other property, no additional tax could be assessed against him as merchant. Under the construction we have placed upon; the Constitution, the Legislature had the power to determine the amount of tax to be assessed upon the plaintiff as merchant, and also to determine the manner or mode in which the tax should be assessed and collected. It was therefore competent for the Legislature to provide, that the amount assessed upon the plaintiff should be ascertained by requiring an amount equal to the ad valorem tax, to be assessed against him as merchant. It is the manner or mode prescribed for assessing the tax on merchants, and falls clearly within the discretion conferred upon the Legislature, both as to the amount of the tax and the manner of ascertaining and assessing it.
But it is argued for plaintiff, that the law imposes a double tax on his merchandize — because it *482 first imposes on it an ad valorem tax of $120, and then imposes a license tax of $120. It is true that the merchant does pay a double tax, in the sense that he is required to pay an aggregate amount made up of the ad valorem tax and the license tax. It is insisted that this is a double tax on his merchandize because it is insisted in the case of Brown v. The State of Maryland, 12 Wheat, 444, that “a tax on the sale of an article, imported only for sale, is a tax on. the article itself.” In that case the question was, whether a State could impose a tax on the importer of goods, while they were still in his possession and before they have become incorporated with the mass of the property in the country, notwithstanding the prohibiton upon the States to “lay any imposts or duties on imports or exports.” That such tax could not be imposed on the goods themselves before becoming incorporated with the mass of the property in the country was clear, but it was supposed the prohibition might be evaded by imposing the tax on the importers personally. It was held that this would only be an indirect mode of levying a tax on imports, because a tax on the sale of an article, imported only for sale, is a tax on the article itself. To have held otherwise, would have been to sanction an evasion of a plain prohibition in the Constitution.
But the Constitution of Tennessee contains no such prohibition against the imposition of taxes on merchants — on the contrary, the power to tax them is expressly recognized, and there is no prohibition on the discretion of 'the Legislature, ' either as to the amount *483 of the tax or the manner of assessing it. The authority, therefore, has no application to the present case. Indeed, the fact assumed by the Court in the case of Brown v. The State of Maryland, may be conceded to be true in the present case, that the merchant may if he choose, impose upon - his goods the additional license tax which he is required to pay, and in that way the selling price of his goods may be enhanced. In this way the merchant becomes a tax-gatherer for the State, instead of a tax payer. It is because of this power, that he has to reimburse himself by adding his own' taxes to the price of his goods, that the merchant has -at all times been taxed nominally, much higher than those whose taxes depended on the value of their property. In this way he has been an important financial agent of the State, in assessing and collecting taxes from the consumers of his goods. It was reasonable to presume that it was on account of the peculiar nature of his occupation, and his power to protect himself from unjust taxation, by distributing the burden among his customers, that the framers of the Constitution of 1834 and of 1870, expressly subjected the merchant to the unrestricted power of taxation by the Legislature.
At one time the tax on merchants under the Constitution of 1834, was a specific amount, without regard to the extent of his business. Afterwards his license tax was graduated according to the amount of goods sold. In the case of the State v. Crawford, 2 Head, 402, a question arose, whether in making his estimate of sales, to ascertain the amount of his tax, the merchant could be required to include articles of *484 produce and manufactures, exempt by the Constitution from taxation, and in that way enhance the amount of the tax to be paid by him. By sec. 545 of the Code, it was provided, that the above named articles should not be exempt from taxation in the hands of a merchant. The question was, whether the Legislature could impose a tax on those articles, in the hands of merchants, which the Constitution declared should be exempt from taxation? The prohibition against the taxation of these articles is express in the Constitution, yet under the clause which authorizes the Legislature to tax merchants in' such manner as they may direct, the Court held that when these articles are in the hands of a merchant, they might be estimated in fixing the amount of his tax. The Court says, “This is not a tax upon the articles, but upon the occupation of the merchant. There would have been no question if the old mode of taxing the occupation of the merchant a gross sum had been continued. But what difference can it make? The change is only as to the ‘manner’ of settling the amount to be paid for the privilege. It is not the article which is taxed but the occupation or privilege.”
The construction of the same clause in the Constitution of 1834, was involved in the case of Mayes v. Erwin, 8 Hum., 290. In that case, the Court held, that the permission, or license, to retail goods in this State, is one of the privileges made subject to taxation under our Constitution and laws. The tax is upon the privilege itself, rather than upon the goods; although the amount of such tax may be graduated at the *485 election of the applicant for license, according to the value of the stock or capital in trade. The. amount of the tax to be paid for the license to sell, depends upon or is ascertained by the amount or value of such entire stock.
So, in the present case, the additional tax imposed upon the merchant is not on his merchandize, but on his occupation, and the ad valorem tax is only adopted as the “manner” of ascertaining the amount of the license or occupation tax, and is authorized by the clause of the Constitution under which the tax is imposed.
It is clear therefore, that from thé adoption of the Constitution of 1834, to the adoption of that of 1870, the uniform legislation and judicial construction of the clause under consideration has been, that in assessing taxes on merchants, the Legislature had the power to assess any amount at discretion, and in the exercise of this discretion, they could assess a specific amount without regard to the amount of capital, or it could be graduated according to the amount of capital, and the tax so assessed, was regarded as a tax on the occupation or privilege, and not upon the goods.
In view of these well known historical facts, it is a reasonable presumption that when the convention of 1870, adopted exactly the same language that had been used in the Constitution of 1834, they adopted it with a full. knowledge of the legislative and judicial construction which had been uniformly placed upon the language.
But that the convention adopted the construction *486 as well as the language of 1834, is placed beyond all controversy by the clause in the Constitution of 1870,, which follows that under consideration. It is as follows: “The portion of a merchant’s capital used in the purchase of merchandize sold by him to non-residents and sent beyond the State, shall not be taxed at a rate higher than the ad valorem tax on property.”
This language conveys the necessary implication that that portion of a merchant’s capital used in the purchase of merchandize sold by him to residents of the State, could be taxed higher than the ad valorem tax on other property; and therefore, it was necessary for the protection of wholesale merchants that this clause should be inserted to prevent them from being subjected to higher taxes than the ad valorem tax on property. If the convention did not understand the preceding clauses as permitting the Legislature in their discretion, to tax merchants higher than the ad valorem tax on property, then this last clause was entirely a work of supererogation.'
With the policy which controlled the convention in adopting either of these clauses, we have nothing .to do. Our duty is to construe what we find in the Constitution, and to determine whether the Legislature has transcended its powers. We find that ' the Constitution has placed no restriction upon the Legislature in the exercise of the power to tax merchants, peddlers and privileges, and we are bound to presume that their power was thus left unrestricted, under the conviction that the representatives of the people would not abuse the power by unjust or oppressive taxation. *487 Whether this power has been abused or not in the enactment of the statutes under consideration, is not for us to determine. But it is our province to determine whether the Legislature has transcended its constitutional power, and being fully satisfied that they have not, we so declare.
But it is also argued, that the act of the Legislature under consideration, is in violation of those clauses of the United States Constitution which prohibit the States from levying imposts or duties on imports, and which give to Congress the power to regulate commerce with foreign nations, and among the several States. By reference to the facts, as agreed on, it does not appear that the plaintiff is an importer, or that any fact is stated which can raise the question as to any conflict between the act of the Legislature and the Constitution of the United States, in regard to the regulation of commerce with foreign nations or among the States.
All that appears by the agreed . case is, that the plaintiff is “a wholesale druggist, doing business in Nashville.” We can not presume that he is an importer, and that his drugs or any portion of them have remained unincorporated with the mass of the property of the country. No question can therefore arise, involving the Constitution of the United States or the laws of Congress. The only issue raised by the facts is, whether as merchant he is liable to pay the tax assessed against him as a merchant. If he was an importer, and his goods were in a condition to be exempt from taxation, by the Constitution of the United States, or the laws of Congress, he was *488 bound to so have presented the facts as to raise that question.
We are therefore of opinion, that there is no error in the judgment below, and affirm the same.
Sneed, J. dissented.